Steven C. Bailey
BAILEY & ROMERO LAW
680 Placerville Drive, Ste. A1
Placerville, CA 95667
(530) 212-3407
Steven@stevencbailey.org

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD MELE,<br><br>Defendant | Case No.: 1:21-CR-00392-RCL-6<br><br>**DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT** |

### DEFENDANT'S MOTION TO DISMISS 18 U.S.C. 1512(k) and 18 U.S.C. 1512(c)(2), and 2

NOW COMES Defendant Ronald Mele ("Mele") by and through counsel, with this Motion to dismiss Counts 1 & 2 based on the misapplication of 18 U.S.C. 1512(k), 18 U.S.C. 1512(c)(2), and 2.

### BACKGROUND

Mele is charged with the following criminal counts: Count 1 - a violation of 18 U.S.C. Sec. 1512(k) (Conspiracy to Obstruct an Official Proceeding); Count 2 - a violation of 18 U.S.C. Sec. 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting); Count 5- a violation of 18 U.S.C. Sec. 1752(a)(1) (Entering or Remaining in a

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 1

Restricted Building or Grounds), and Count 6 - a violation of 18 U.S.C. Sec. 1752(a)(2) (Disorderly or Disruptive Conduct in a Restricted Building or Grounds).

The counts argued here are the alleged violations of 18 U.S.C. 1512(k), 18 U.S.C. 1512(c)(2) and 2.

None of these counts allege any violent, harmful, hurtful, deceptive, or traditional criminal conduct which might be divorced from Mele's mere political advocacy.

## INTRODUCTION

Mele came to Washington on Jan. 6 to attend the Trump rally and listen to President Trump's speech given on the Capitol Mall. Mele did not come to engage in any type of violence. He came to give his support to Trump by being present and was exercising his First Amendment Constitutional Right of freedom of expression. After the rally, Mele walked with the crowd to the Capitol. While he was on the Capitol grounds, he never entered into the Capitol building. With the fact all the people were "moving as one" to the Capitol, there was no indication to let Mele (or any other reasonable person) know the grounds were restricted; or maybe more importantly, to know at what time the grounds were allegedly restricted. Mele, innocently and with no unlawful intent to obstruct a government proceeding or conspire to do so, followed the crowd onto the Capitol complex. Cell phone data, provided by the FBI, confirms Mele made his way over to the steps on the west side and went up about halfway. At that point, his wife texted him and told him individuals had breached the Capitol. From where Mele was positioned in the crowd, he could not know the Capitol had been breached. Upon hearing this news, Mele said, "No way!" He turned and went back down the steps to leave the Capitol area. (Mele had no prior

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 2

knowledge any individuals would enter the Capitol nor was it reasonably foreseeable to him to know that one of the individuals with whom he traveled to Washington D.C. would enter the building). Mele was on the ground at the base of the steps for just minutes before he left the grounds and returned to his hotel. (According to the data provided by the FBI in discovery, Mele was in his hotel <u>before</u> the citywide curfew was imposed at 5:00 PM on Jan. 6.)

Mele went to Jan. 6 to listen to and support President Trump. Mele was a food sales account manager at the time, who traveled extensively. As a result of his travels, he had accumulated points on his credit card. The trip's rental car and hotel room were paid up front with his credit card, with the understanding that the individuals traveling with him would pay him back.

## Argument

A. <u>Count 18 U.S. Code Sec 1512(c)(2) (obstruction of an official proceeding)</u>

1. <u>Obstructing an Official Proceeding and the Elements of the Offense</u>

The first element of this offense is an attempt to or did obstruct an official proceeding. Mele came to the rally to show his support for President Trump. While he went with the crowd toward the Capitol, it was not long before he was walking by himself away from any other members of his group. He did not know where the others were as he had lost touch with them shortly after beginning to walk toward the Capitol.

Mele was nowhere near the riot which occurred on the steps of the Capitol[1].

---

[1] He was in the crowd away from where the breach and riot occurred.

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 3

Courts reviewing §1512(c)(2) have made it clear some action by the defendant must occur to prove each element and the defendant needs to be the person causing that act to occur. Mele does nothing to establish the crime.

The Court of Appeal for the District of Columbia considered this statute in the case *USA v. Fischer* LEXIS 22-3038 (USDCA District of Columbia).

A.

**Background of the Fischer Case:**

In USA (Appellant) v. Joseph Fischer (appellee), decided on April 7, 2023, in the *US Court of Appeals for the District of Columbia.*

Fischer, along with others, was charged with various offenses concerning the Capitol riot of Jan. 6. One of the charges, and the one considered in question by the court, was the charge of "Obstruction of an Official Proceeding," 18 U.S.C. § 1512(c)(2). Section 1512(c) in full reads:

(c) "Whoever corruptly,

(1) alters, destroys, mutilates, or conceals, a record, document, or another object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) "otherwise" obstructs, influences, or impedes any official proceeding or attempts to do so, shall be fined under this title or imprisoned for not more than 20 years or both."

In the trial court, Fischer, along with the other defendants, asked the court to dismiss the (c)(2) charge, arguing that statute did not prohibit their alleged conduct on Jan. 6 under §1512.

The trial court found in the defendants' favor and dismissed that charge, United States v. Miller, 589 F. Supp. 3d 60, 67-69 (D.D.C. 2022).

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 4

The indictment alleged Miller "... attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the constitution...."

Miller had argued that §1512(c)(2) must be read as a catch-all to the narrowly focused subsection preceding it. The government on the other hand argued §1512(c)(2) was a stand-alone clause and encompasses any act, whether a document or record is involved or not.

The Miller court (Miller) found §1512(c) was ambiguous concerning how §(c)(2) relates to §(c)(1). Although §(c)(1) concerns obstructive conduct involving a record, document, or other object, the words of §(c)(2) more generally address obstructing, influencing, or impeding any official proceeding or attempting to do so with no mention of a document and/or record of any kind. Miller was focused on the meaning of *"otherwise,"* which connects the two clauses. Miller determined §(c)(2), because of "otherwise," must be interpreted as limiting §(c)(1). Miller found the two sections were not separate and distinct, as did the appellate court, but related, and that is what "otherwise" indicated: some type of relationship between the clauses, or otherwise, why would it be there - that is to say, that §(c)(2) must be an extension of and be similar to §(c)(1).

And as a result, Miller held §1512(c)(2) required the defendant to have taken some action with respect to a *document, record, or another object to corruptly obstruct, impede or influence an official proceeding*, and §1512(c)(2) because of the connecting word *"otherwise,"* is not a stand-alone clause and has to be read in line with (c)(1). Miller found to read the §1512(c)(2) any other way makes §1512(c)(2) untenable – "otherwise," has to relate to something, and with (c)(1) removed what does "otherwise" relate to? Miller, in its lengthy analysis, held that reading (c)(2) as a stand-alone clause is not textually tenable nor was it in line with the other sections of §§1501

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 5

et. seq. Therefore, if Congress wanted §(c)(2) to be a stand-alone clause, it would have worded it differently as it had done with other sections of §§1501 et. seq. Miller held to violate §11512(c)(2), an act described in that section would have to be aimed at a document or record of some type which related to an act, and the act in question is the obstruction of Congress as described in the indictment; and therefore, because Miller's indictment did not allege he violated (c)(2) by committing obstructive acts related to "a document, record, or other object," the trial court dismissed the (c)(2) count against Miller and the others, including Fischer. The government appealed.

B.

**The issue before the appellate court as determined by a 2-1 split decision was whether a person can be charged with corruptly obstructing, influencing, or impeding an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).**

The question raised by this case was, "…whether individuals who allegedly assaulted law enforcement officers while participating in the Capitol riot can be charged with corruptly obstructing, influencing, or impeding an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)." Because the trial court's decision involved a question of law, the appellate court reviewed de novo.

The majority's read on §(c)(2) is that it reaches all acts which corruptly obstruct or influence an official proceeding. In the majority's view, the word which attaches the two clauses "otherwise," means any act that is similar to §(c)(1), which per the majority, was any act - documents included or not (a catch-all phrase) – which impedes an official proceeding; and therefore, the majority found that the defendants did violate §(c)(2).

The majority concluded §(c)(2) had nothing to do with documents mentioned in §(c)(1) and it was the intent of Congress for §(c)(2) includes any activity, document or not, which impeded an

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 6

official proceeding. The majority saw both §(c)(1) and §(c)(2) as stand-alone clauses in direct opposition to what the lower court held, but again, to read §(c)(2) as a stand-alone clause with §(c)(1) completely out of the picture, one has to ask: "To what is 'otherwise' referring to?"

According to the dissent, under the majority view, if a person corruptly obstructs an official proceeding by altering, destroying, mutilating, or concealing a record, document, or other objects, the first subsection applies, and if a person corruptly obstructs an official proceeding in any other way (documents involved or not), the second subsection applies. Thus §1512(c) reduces to a single provision criminalizing any act which corruptly obstructs an official proceeding which makes §(c)(1) meaningless, which was not the intent of Congress; otherwise, per the dissent, why would Congress have included subsection §(c)(1) in the first place?

All three appellate panel judges had different grammatical interpretations on the connecting word "otherwise." Fundamental English grammar lists "otherwise" as an adverb, i.e., it modifies other words – typically other verbs, but it can also modify other adverbs and nouns as well.

A basic rule of grammar is when "otherwise" is used after a semicolon, it acts as a conjunctive adverb which brings together two completely independent clauses. The conjunctive adverb uses the second clause to modify the first clause, which means that it uses the entire second clause to modify or change the first clause.

The majority never touched on the part of grammar which "otherwise" occupies. The majority never went further than its dictionary definition. The grammatical application of a word is fundamentally just as important as its definition, if not more so, and the dissent brings up that point.

Under the majority view, "otherwise" modifies nothing, which the dissent said is incorrect since "otherwise" is an adverb and has to modify/change some word(s). The dissent said the

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 7

majority implies the second clause is an independent clause; in fact, the very purpose of adding "otherwise" per the dissent is to make the second clause a dependent modifying clause. The correct read, according to the dissent then is that "otherwise" ties subsection (c)(2) to the verb(s) "destroys, mutilates...a record, or other object," in the first clause. So then, per the dissent, there must be some type of act which involves a document that interferes with an official proceeding.

Mele would assert the minority view is the correct reading of the section and Count 2 should be dismissed.

2. <u>Intended to Obstruct or Impede</u>

The second element requires the government to show Mele **intended** to obstruct or impede an official proceeding. Mele does not contend the counting of the ballots from the Electoral College in the joint session was not an official proceeding.

The issue is: Does Mele have an intent to obstruct or impede the count? Any assessment must recognize the government carries a very heavy burden at this point. (See Judge Amy Berman Jackson's sentencing statement, pg. 18, USA v. Joshua Black (January 13, 2023)

What was the defendant's actual intent on Jan. 6?

D.C. Standard Jury Instruction 3.101 says you may infer someone's intent from the surrounding circumstances. You may consider any statement made or acts done, or not done, by the defendant and all other facts and circumstances received in evidence which indicate his intent. You may infer but are not required to infer a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do.

The government cannot prove beyond a reasonable doubt Mele had intent to either impede or obstruct the proceedings before Congress. In fact, Mele, while milling around with the crowd and wandering toward the Capitol, never reached a location where he could enter the building to

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 8

obstruct the proceeding. In fact, he exited the area upon learning people were entering the Capitol, which shows the objective intent of simply going to Capitol Hill to peacefully protest as the President had asked the crowd to do. The burden is on the government to demonstrate Mele was intent on acting in a criminal manner as he wandered to the Capitol. In this case, Mele's statement to the FBI shows his heartfelt reasoning for the trip was to show support for President Trump. "I just hope… that you…I hope you...real-really understand that it was a…glorified Trump rally road trip. It wasn't a…intent to impede police and riot…at all. Even when I was there I had a sick feeling in my stomach like this is…this is … disgusting city. I just wanna…leave. I don't wanna…be here."

In addition, the law requires there be a connection or relationship in time, causation, or logic between the obstructive act and the proceeding; that is, the government must show Mele knew his actions were likely to affect the proceeding. It is not enough to show the overall crowd mentality knew their actions were likely to affect the proceedings or other individuals possessed the intent to obstruct the proceedings that day, but the government must show Mele's specific knowledge and intent was to disrupt or obstruct the proceedings.

As an initial matter, this court **must** decide whether the government is required to prove Mele knew his actions (again, not what the crowd mentally knew) of coming to Washington to attend the Trump rally would have impeded an official proceeding.

In *United States v. Aguilar*, 515 U.S. 593, (1995), the Supreme Court held a similar statute, 18 U.S.C. §1503, which prohibits "corruptly or by threats of force, . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice," contains "a `nexus' requirement — that the act must have a relationship in time, causation, or logic with the judicial proceedings." *Id.* at 599. In *Aguilar*, the

- 9

court stated "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." 515 U.S. at 599.

In *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009), the court explained, "[t]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of `corruptly' obstructing."

In *Arthur Andersen LLP v. United States*, 544 U.S. 696, (2005), the Supreme Court extended this requirement — that there be "a `nexus' between the obstructive act and the proceeding" — to another similar statute, 18 U.S.C. § 1512(b)(2), which prohibits, among other things, "knowingly . . . corruptly persuading] another person . . . with intent to . . . cause or induce any person to . . . withhold testimony . . . or . . . document[s] . . . from an official proceeding." *Id.* at 708, 125 S.Ct. at 2137.

In U.S. v. Friske 640 F.3d 1288 (11th Cir. 2011), Dennis Friske appealed his conviction for attempting to obstruct an official proceeding, by attempting to dispose of and hide assets involved in a forfeiture proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. Friske argued the District Court erred in denying his motion for judgment of acquittal because the government failed to introduce sufficient evidence to permit the jury to find he knew of the existence of the forfeiture proceeding. The Friske court agreed and concluded the "government was required to introduce sufficient evidence for the jury to find that Friske knew his actions were likely to affect a forfeiture proceeding, and that it failed to do so." Although the Friske court was discussing a forfeiture proceeding, the same logic the Friske court used can apply to a judicial proceeding as is the case here.

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 10

The facts before the court describe a person on a vacation road trip, who attended a political event, not someone on a mission to commit a criminal act. Where is Mele's specific intent to obstruct?

3. <u>Acting knowingly</u>

This element requires that Mele acted knowingly, with an awareness of the natural and probable effect of his conduct would be to obstruct or impede an official proceeding.

The analysis of Element 2 above is incorporated here by reference.

Here, the government must show Mele, as an individual knew (not what the collective crowd mentally knew), that exercising his First Amendment rights at the Trump rally would naturally lead to an impeding or obstructing of an official proceeding; and further, and in addition, to impeding or obstructing an official proceeding; within his consciousness, Mele knew (again, not what the collective crowd knew) with sufficient awareness that the exercise of his First Amendment Right to protest would naturally and probably lead to an impeding or obstructing of something governmental.

As stated by the Friske court above, the government is required to introduce sufficient evidence for the jury to find that Mele knew his actions of going to the Trump rally would obstruct an official proceeding. The government cannot do that.

4. <u>Acting corruptly</u>

This element requires Mele to have acted corruptly, which means Mele acted with an unlawful purpose. The analysis of Fischer above is incorporated here by reference.

In this matter, Mele did not act corruptly or with an unlawful purpose. He chose to come to Washington D.C. to attend a political rally. When the rally was over, he walked with tens of thousands of other people to the Capitol grounds, which to a reasonable person appeared to be

- 11

open to the public. There was no indication to any reasonable person in the crowd the grounds were somehow off limits.

The government's position that some "bicycle" racks dispersed across the grounds were somehow meant to indicate the area was restricted is ridiculous. The question is - Would a reasonable person think the Capitol grounds were closed? The answer to this question is absolutely "No."

### C.

### 18 U.S. Code §2 (Aiding and Abetting)

The Supreme Court has stated the federal aiding and abetting statute has two primary components: 1) "A person is liable under §2 if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014).

The intent requirement is satisfied when a person actively participates in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense. *Id.* at 1248–49; *see also United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) (reversing defendants' convictions for aiding and abetting robbery on an Indian reservation because there was no evidence that defendants had foreknowledge that robbery was to occur).

In Mele's case, there are no facts to establish Mele had foreknowledge that one person in his group would commit an offense; therefore, Mele cannot be found guilty of aiding and abetting.

### D.

### 18 U.S.C. Sec 1512(k) (Conspiracy to obstruct an official proceeding)

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 12

This offense requires 1) a mutual agreement or understanding, 2) knowingly entered by the defendant, with 3) an intent to jointly commit a crime. The analyses above of 1512(c)(2), and 2 are incorporated here by reference. There are no facts in evidence that establish Mele: 1) entered into a mutual agreement, 2) knowingly entered into an agreement or even had one scintilla of intent to jointly commit any crime.

## CONCLUSION

Defendant Mele engaged in no illegal activity nor had any intent to break the law. For all the reasons discussed in this motion, Count 1 and Count 2 of Mele's second superseding indictment must be dismissed.

Dated: June 9, 2023

Respectfully submitted,

/s/ Steven C. Bailey
*Steven C. Bailey SBN 146382*
*680 Placerville Drive, Suite A1*
*Placerville, CA 95667*
steven@baileyandromerolaw.net

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 13

**CERTIFICATE OF SERVICE**

I, Steven C. Bailey, hereby certify that on June 11, 2023, I caused a copy of this Motion to Dismiss Counts 1 and 2 of the Second Superseding Indictment to be delivered to the parties of record by filing it electronically.

/s/ Steven C. Bailey
Steven C. Bailey

DEFENDANTS MOTION TO DISMISS COUNTS 1 AND 2 OF THE SECOND SUPERSEDING INDICTMENT - 14