Steven C. Bailey
BAILEY & ROMERO LAW
680 Placerville Drive, Ste. A1
Placerville, CA 95667
(530) 212-3407
Steven@stevencbailey.org

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | Case No.: 1:21-CR-00392-RCL-6 |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT** |
| RONALD MELE, | |
| Defendant | |

## DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 : REDRESS OF GRIEVANCES ON FIRST AMENDMENT GROUNDS

Defendant Ronald Mele ("Mele"), by and through counsel, with this Motion seeks to dismiss Counts 5 & 6 on First Amendment grounds.

## BACKGROUND

Mele is charged with four criminal counts in the second superseding indictment, two of which he is contesting here: **COUNT 5** of the superseding indictment, a violation of 18 U.S.C. Sec. 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds); and **COUNT 6** of the superseding indictment, a violation of 18 U.S.C. Sec. 1752(a)(2) (Disorderly or Disruptive Conduct in a Restricted Building or Grounds). These allegations are aimed wholly

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 1

at Mele's exercise of his First Amendment right to petition the government for a redress of grievances at the U.S. Capitol on January 6, 2021 (Jan 6).

None of these counts allege any violent, harmful, hurtful, deceptive, or traditional criminal conduct which could be included with Mele's mere political advocacy.

## INTRODUCTION

Mele came to the Capitol on Jan 6 to give his support to then-President Trump and to do so without violence, while exercising his First Amendment Constitutional rights of freedom of expression and redress of grievances.

Mele listened to Trump's speech on the Capitol Mall and then walked with the crowd to the Capitol grounds; however, he never went into any building. The fact is with all the people "moving as one" to the Capitol, there was no indication to let Mele, or any other reasonable person, know the grounds were restricted, and, maybe more importantly, to know at what time the grounds were allegedly restricted. Mele, innocently and with no unlawful intent to trespass, followed the crowd onto the Capitol complex. Mele was on the U.S. Capitol grounds with tens of thousands of other people. Cell phone data, provided by the FBI, shows that Mele made his way over to steps on the westside and went up about halfway. At that point, his wife texted him and told him individuals had entered the Capitol. Upon hearing this news, Mele turned and headed back down the steps. He was on the ground at the base of the steps and made one short stop and then exited the Capitol and National Mall property.

## ARGUMENT

1. **"Bicycle Racks" and Snow Fencing**

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 2

Mele acknowledges the Capitol building and grounds can be temporarily restricted by the Capitol police; however, the fact is with all the tens of thousands of people "moving as one" to the Capitol, there was nothing to let Mele, or any other reasonable person, know the grounds were restricted or to know at what time the grounds were allegedly restricted.

The government's argument points to bicycle racks and snow fencing as the means to provide notice of restriction to the crowds. These structures were not present when Mele arrived at the Capitol grounds.

How would "bicycle racks" and snow fencing indicate to a reasonable person that the Capitol building itself was off-limits? The videos from Jan 6 show officers on duty that day did little, if anything, to advise the tens of thousands of people, who were not directly in front of the Capitol, that the grounds were restricted. Moreover, it is clear that the fencing, such as it was, had been removed prior to Mele and the crowd traversing the area where the fencing allegedly had been.

### 2. U.S. Capitol Building and U.S. Capitol Grounds

As a rule, of all the places in America, the U.S. Capitol must be <u>the most accessible</u> to the citizenry. Conversely, the Capitol is perhaps the place in America where the government has the <u>least authority</u> to restrict citizen presence, petitioning, demonstrating, and activism. The First Amendment explicitly states "Congress shall make no law" restricting free speech, peaceable assembly or interfering with the right to petition the government for redress of grievances. Thus, Congress is subject to the control and correction of the public according to the plain text of the Constitution. See, e.g., *Lederman v. United States*, 291 F.3d 36 (DC Cir. 2002) (striking down a regulation banning leafleting and other "demonstration activities" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol).

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 3

The *Lederman* Court found sidewalks around the Capitol are a public forum and a regulation banning leafleting and other "demonstration activities" at the foot of the House and Senate steps on the east side of the Capitol is unconstitutional. Id.

3. **Demonstrating for Redress of Grievances**

Demonstrating for the redress of grievances is the birthright of every American. '[D]emonstrate' has been defined by the Supreme Court as "to make a public display of sentiment for or against a person or cause" and "picket" as an effort "to persuade or otherwise influence"). *Hill v. Colo.*, 530 U.S. 703, 721-22 (2000) (quoting Webster's Third New International Dictionary).

The no-demonstration and no-picketing zone established by 40 U.S.C. § 5104(e)(2)(G) in the entirety of a 1.5-million-square-foot building is the largest infringement on basic First Amendment rights ever imposed anywhere in the United States.

Mele's indictment is aimed at chilling Mele's (and millions of others) right to petition and speak against perceived government abuses at the Capitol. The government seeks to insulate congressional representatives, staff, officials, and attendees from receiving the messages of Mele and other protestors and petitioners. Such efforts by the government are undeniably unconstitutional. See, e.g., *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000).

Under the First Amendment, "free speech zones" are presumptively invalid everywhere in the country. However, there are a few temporary and secure spaces where courts have allowed limited restrictions on picketing and demonstration.

Never, however, has any court allowed the government to silence and censor all petitioning and protesting in such a vast radius as the government seeks here.

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 4

While some cases have recognized that certain officials or facilities are so highly sensitive or protected that protestors can be confined to "free speech zones" at a distance away.

In *Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994), the Supreme Court determined that a 300-foot buffer between protesters and the entrance to an abortion clinic was <u>too great a restriction</u> on speech; however, a 36-foot buffer was acceptable. *Id.* at 771. The Court reasoned that "citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to freedoms protected by the First Amendment." *Id.* at 774.

The late Judge Larry McKinney of the U.S. Southern District of Indiana dealt with a case similar to Jan. 6 involving a protestor who picketed a speech by Vice President Dick Cheney in 2002. *Blair v. City of Evansville*, 361 F. Supp. 2d 846 (S.D.In. 2005).

Blair was arrested for "disorderly conduct" while merely holding a sign that stated "Cheney 19th Century Energy Man" at an event in Evansville, Indiana. Blair later sued arresting officers, and the court held "the restriction of protesters to an area <u>500 feet</u> away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the [government's] goals of safety."

The expansive speech and demonstrating restrictions here (effectively <u>the entire</u> 1.5 million square foot Capitol complex) are massively over-expansive and not narrowly tailored to serve a significant government interest. See *United States v. Albertini*, 472 U.S. 675, 689 (1985)). While the Vice President and Congress can and should be properly protected from danger, the

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 5

First Amendment requires that the Vice President and Congress cannot be entirely insulated from picketing and advocacy.

Judge McKinney found the restriction of protesters to an area 500 feet away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the goals of safety.

> Furthermore, other cases that have looked at restrictions on access to public buildings similar to the Centre have found a violation of the First Amendment on more narrow restrictions. See, e.g., *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 861-62 (9th Cir. 2004) (200 and 265 feet security zones found overbroad); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (seventy-five-yard security zone found overbroad because it prevented demonstration from reaching intended audience); but see *Madsen*, 512 U.S. at 771 (holding that a thirty-six-foot buffer zone on public property was narrow enough).

*Blair*, 361 F. Supp. 2d at 858.

Similar to the 1,000-foot ban in *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002), Judge McKinney found the location of the protest zone in *Blair* "eliminated any meaningful avenue for the communication of ideas by the protestors to at least one intended audience, the attendees."

According to the Architect of the U.S. Capitol:[1]

---

[1] Note that the government here is <u>asserting that the entire U.S. Capitol</u>—one of the largest public buildings in the United States, as well as its grounds—is a no-free speech and no picketing zone.
DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT
- 6

As the nation has grown so has the U.S. Capitol: today it covers well over 1.5 million square feet, has over 600 rooms, and miles of corridors.

Today, the U.S. Capitol covers a ground area of 175,170 square feet, or about 4 acres, and has a floor area of approximately 16-1/2 acres. Its length, from north to south, is 751 feet 4 inches; its greatest width, including approaches, is 350 feet. Its height above the baseline on the east front to the top of the Statue of Freedom is 288 feet. (Architect of the Capitol, "The U.S. Capitol Building," (https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building) (accessed 8/14/2022).

Significantly, some federal courts have *already held* that the West Front Lawn is a traditional public forum where demonstrations must be allowed. See also, e.g., Lederman, 291 F.3d at 44.

In *Lederman*, the D.C. Circuit declared facially unconstitutional a "regulation banning leafleting and other 'demonstration activit[ies]' on the sidewalk at the foot of the House and Senate steps on the East Front of the United States Capitol." 291 F.3d at 39 (alterations in original). In finding the law at issue in *Lederman* failed the narrow-tailoring analysis, the Court of Appeals cautioned that "the Constitution does not tolerate 'regulations that, while serving their purported aims, prohibit a wide range of activities that do not interfere with the Government's objectives.'" Id. at 44 (quoting *Cmty. For Creative Non-Violence v. Kerrigan* (CCNV), 865 F.2d 382, 390 (D.C. Cir. 1989)).

Applying that principle, the panel concluded that the "ban's absolute nature" rendered the

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 7

regulation not narrowly tailored, as "[s]ome banned activities" "cannot possibly" interfere "with the stated objectives of traffic control and safety." Id. At 45.

## COUNT 5 VIOLATES MELE'S FIRST AMENDMENT RIGHTS TO DEMONSTRATE AND PROTEST AT THE CAPITOL

In Count 5, Mele is accused of "Entering or Remaining in a Restricted Building or Grounds." First, Mele never entered the Capitol building proper. There is no law of Congress which makes the Capitol a restricted building. The Capitol building belongs to the people. Congress cannot lawfully restrict the Capitol and its grounds in such a way, as they have no constitutional authority to "make [any] law abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Section 1752(a) does not proclaim that the Capitol grounds as "restricted."

The Capitol grounds are open to the public during normal business hours. Prior to Jan 6, the official website explicitly informed visitors that "The Capitol Visitor Center, the main entrance to the U.S. Capitol, is located beneath the East Front Plaza. The Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday" It is simply not possible for the government to lawfully convict Mele of "enter[ing] and remain[ing] in the United States Capitol, without lawful authority to do so," when, in fact, Mele never entered into the Capitol Building.

Mele has a constitutional right, under the First Amendment, to monitor, watch, advocate,

//

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 8

petition, and protest regarding the work of Representatives and Officials inside the Capitol building.

Indeed, it can be argued that Mele <u>has a civic duty</u> to monitor, observe, watch, and (try to) influence the goings-on inside the Capitol.

Although Mele's right and duty to watch and monitor activities inside the Capitol may be subject to reasonable time, place, and manner restrictions, the government cannot prevent Mele from exercising his constitutional rights.

<u>Mele's right to enter the Capitol is not subject to the arbitrary permission, will, or discretion of the government.</u> *Cf., inter alia, Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002); *Bay Area Peace Navy v. United States*, 914 F.2d 1224 (9th Cir. 1990); *A Quaker Action Group v. Hickel*, 137 U.S. App. D.C. 176, 421 F.2d 1111 (D.C. Dir. 1969)).

Given these principles, Count Five does not state an offense under federal law upon which any relief can be granted and must be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

### **COUNT 6 VIOLATE MELE'S FIRST AMENDMENT RIGHTS TO DEMONSTRATE AND PROTEST AT THE CAPITOL**

Count 6 in Mele's indictment also violates the Constitution.

Count 6 alleges that Mele was "disruptive or disorderly." *Disorderly and disruptive conduct occurs when a person is unreasonably loud and disruptive under the circumstances or*

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 9

*interferes with another person by jostling against or unnecessarily crowding that person.* USA v. Matthew Martin. *Magistrate No 21-MJ-388* (D.D.C., 2022). The facts will show that Mele was acting peacefully. FBI supplied video shows Mele walking on the Capitol grounds with tens of thousands of others. He was not engaged in any disruptive behavior but was just wandering on the grounds, talking to people, taking in the spectacle, and not being loud or interfering with anybody.

Mele was doing nothing more than exercising his constitutional rights and doing so in a peaceful way. He has a constitutional right, under the First Amendment, to monitor, watch, advocate, petition, and protest regarding the work of representatives and officials inside the building.[2]

Given these principles, Count Six does not state an offense under federal law upon which any relief can be granted and must be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## CONCLUSION

Mele is accused of nothing more than walking on the Capitol grounds and exercising his First Amendment rights during normal business hours as part of a demonstration of expression regarding the fairness of the 2020 presidential election. Mele has a First Amendment right to express his opinions in such a manner.

---

[2] Mele never enters into any Government building, let alone the US Capitol.

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 10

For all the above-described reasons, counts 5 and 6 of the superseding indictment must be dismissed.

//

//

//

Dated: June 9, 2023

Respectfully submitted,

/s/ Steven C. Bailey
Steven Bailey SBN 146382
680 Placerville Drive, Suite A1
Placerville, CA 95667
steven@baileyandromerrolaw.net

## CERTIFICATE OF SERVICE

I, Steven C. Bailey, hereby certify that on June 11, 2023, I caused a copy of this Motion to Dismiss Counts 5 and 6 of the Second Superseding Indictment to be delivered to the parties of record by filing it electronically.

/s/ Steven C. Bailey
Steven C. Bailey

DEFENDANT'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE SECOND SUPERSEDING INDICTMENT - 11